STATE OF CONNECTICUT *v.* JONATHAN WATLEY
(11443)

PETERS, C. J., HEALEY, PARSKEY, DANNEHY and COVELLO, Js.

Argued January 17—decision released March 19, 1985

*David Goldman,* with whom, on the brief, were *Earl L. Williams* and *Max F. Brunswick,* for the appellant (defendant).

*Guy Wolf III,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

COVELLO, J. The defendant was tried to the jury on charges of burglary in the second degree, sexual assault in the first degree with a deadly weapon and larceny in the first degree. The charges arose out of the unauthorized entry into a home in Hamden on July 4, 1980, the sexual assault of the occupant, and the subsequent removal of personal property belonging to the owner. The jury found the defendant guilty as charged. The court sentenced the defendant to consecutive terms on each count for a total effective sentence of nineteen to thirty-eight years.

On appeal, the defendant claims error in the court's instructions to the jury that they might draw an unfavorable inference from the defendant's failure to produce certain witnesses described by him in the course of his alibi defense. He further claims that the court

erred in an evidential ruling which prohibited the defendant from testifying to the content of a co-accused's statement made shortly after the co-accused's arrest.

We hold that the factual circumstances described here warranted an instruction to the jury that they might draw an unfavorable inference from the accused's failure to produce witnesses described by him. We further hold that the disputed testimony was cumulative and therefore within the trial court's discretion to exclude. We therefore find no error.

The jury might reasonably have found that on the evening of July 4, 1980, the defendant and Warren Lowery forcibly entered a home in Hamden. At the time of their entry, the victim was asleep in the master bedroom. The defendant, who was carrying a long-barreled gun, and Lowery entered the master bedroom and demanded the victim's money and jewels. Both men placed a pillow over her head and forced her to engage in sexual intercourse. They then fled taking with them jewelry, a gold inscribed watch, stereo equipment, a coin, and the contents of the victim's purse.

During the subsequent investigation, the defendant's fingerprints were found inside the window through which entry was made. Police thereafter found the gold inscribed watch at his home. On July 31, 1980, the victim identified the accused from a group of thirteen photographs.

## I

The defendant testified in his own behalf. He claimed by way of alibi that on the evening in question he went to Estavia Lockett's home at 11 p.m. and remained there until 3 a.m. He further testified that Lockett's brothers and sister should have seen him there since he had seen them. He stated that they were wearing

clothes when he observed them. Finally, he stated that these people were still living at the Lockett home. Lockett testified for the defense but was unable to recall whether the defendant was at her home on the evening of July 4, 1980, as he claimed.

The defendant claims that there is no evidence to support a conclusion that the brothers or sister actually saw him on the night in question and that their mere presence on the premises was inadequate to warrant an instruction that the jury might draw an unfavorable inference from his failure to produce them at the time of trial.

"The failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause. . . . There are two requirements for the operation of the rule: The witness must be available, and he must be a witness whom the party would naturally produce. . . . A witness who would naturally be produced by a party is one who is known to that party and who, by reason of his relationship to that party or to the issues, or both, could reasonably be expected to have peculiar or superior information material to the case which, if favorable, the party would produce." *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598 (1960). The rule is applicable to criminal prosecutions. *State* v. *Daniels,* 180 Conn. 101, 109, 429 A.2d 813 (1980).

The trial court instructed the jury that in the event that they concluded that the "brother and sister were present"[1] they might draw an unfavorable conclusion

---

[1] The trial court's instructions were as follows: "In this case Mr. Wolfe, the prosecutor, called your attention to the fact that there was testimony from the defendant, I believe, that he was at the home of the girlfriend, and that the brother and sister were present. I don't recall whether or not he said he saw them or they saw him, *but in the event that you decide that*

or inference from the defendant's failure to have them testify. "[P]resent" is defined as "being in view or at hand: being before, beside, with, or in the same place as someone or something." Webster, Third International Dictionary (1971).

The court's unambiguous instruction invited the jurors to examine what the accused said about these witnesses and make, as a threshold consideration, their own judgment as to whether the witnesses were "present" within the word's common meaning. Witnesses whom the defendant described as being at a home he was allegedly visiting, who he said should have seen him because he had seen them, whom he describes with sufficient particularity to observe that they were dressed when he saw them, surely are "present" within the word's common meaning. If present within that context, they clearly would have had peculiar and superior information material to the alibi defense and would be parties whom the defendant would naturally produce as they would corroborate his claim that he was someplace else at the time of the crime. Since the defendant testified that these people were still living at Lockett's home and, therefore, available at the time of the trial, all of the *Secondino* criteria were met and the court's instruction was legally correct.

## II

The principal witness against the defendant was the co-accused, Warren Lowery. Lowery testified that if the defendant had sent him money while he was in jail, he might not have given the police a statement implicat-

---

*the girl's brother and sister were present,* you may draw an inference from that that Mr. Watley did not bring these people in as witnesses, and that if he did bring them in as witnesses you could draw an unfavorable conclusion or inference from that, because if these people were within his power to bring into court, he would naturally bring them in. You could draw the inference that their testimony would be unfavorable." (Emphasis added.)

ing him. Lowery denied, however, having any actual conversation after his arrest with the defendant concerning this.

The defendant, on the other hand, testified that such a conversation with Lowery had taken place. The defendant was then asked: "What did Warren Lowery say?" At that point an objection on the grounds of hearsay was made. The court sustained the objection. The defendant now claims that although hearsay, the substance of the conversation was sought to be admitted not for the truth of its content, but to attack Lowery's credibility by impeaching his earlier testimony that a conversation between the two had not taken place after Lowery's arrest.

If the substance of the conversation was sought to be admitted not for the truth of its content, but to establish that the conversation itself had taken place, it is not hearsay. *State* v. *Miller,* 154 Conn. 622, 629, 228 A.2d 136 (1967). Its exclusion here, however, does not constitute reversible error for, as the defendant concedes, the purpose of establishing his claim that the conversation had occurred was to show that Lowery's motive for incriminating the defendant was the fact that the defendant had not sent him money. The defendant's claim concerning Lowery's motive was simply corroborative and cumulative of the obviously more damaging testimony to the same effect from Lowery himself. As cumulative evidence, it was within the trial court's discretion to exclude it. *State* v. *Gooch,* 186 Conn. 17, 24, 438 A.2d 867 (1982).

There is no error.

In this opinion the other judges concurred.